**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

UBIQUITOUS CONNECTIVITY, LP,
     **Plaintiff,**

v.

CENTRAL SECURITY GROUP –
NATIONWIDE, INC.,
     **Defendant.**

**CASE NO. 4:18-cv-00368-JED-FHM**

**PATENT CASE**

**JURY TRIAL DEMANDED**

**CENTRAL SECURITY GROUP – NATIONWIDE, INC.'S**
**RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO**
**STATE A CLAIM AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.   SUMMARY OF THE ARGUMENT ........................................................................ 1

II.  STATEMENT OF THE ISSUE ............................................................................ 2

III. STAGE AND NATURE OF PROCEEDINGS ......................................................... 2

IV.  THE ASSERTED PATENTS .............................................................................. 2

      A.   Legal Standard. ..................................................................................... 4

           1.   This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6)............................................................................................. 4

           2.   The Law of 35 U.S.C. § 101. ............................................................... 5

      B.   The Asserted Patents are Invalid under 35 U.S.C. § 101. ................................. 7

           1.   *Alice* Step 1: The asserted patents are directed to the abstract idea of monitoring and controlling devices. ........................................................ 7

           2.   *Alice* Step 2: The asserted patents' claims do not include any inventive concept because they contain only well-understood, routine, and conventional features......................................................... 17

V.   CONCLUSION ................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ................................................................................. *passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. June 12, 2015) ................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ........................................................................5, 19

*Becton, Dickinson & Co. v. Baxter Intern., Inc.*,
   No. 1:14–cv–222–LY, 127 F.Supp.3d 687, 2015 WL 5148850 (W.D. Tex.
   Aug. 3, 2015) .................................................................................................13, 15

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ............................................................................20

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ....................................................................................5, 6, 7, 8

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ......................................................................11, 19

*Cloud Satchel, LLC v. Amazon.com, Inc.*,
   76 F.Supp.3d 553 (D. Del. 2014) ..........................................................................13

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ..................................................................8, 17, 19

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018) ............................................................................15

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ..................................................................................5

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ..............................................................................6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ............................................................................18

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ................................................................................................6

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ................................................................................................7

*Elec. Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ......................................................................13, 14

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)................................................................15, 18

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012).........................................................................7

*Gaelco S.A. v. Arachnid 360, LLC*,
   293 F. Supp. 3d 783 (N.D. Ill. 2017) ...............................................................13

*Intellectual Ventures I LLC v. Capital One Bank U.S.A.*,
   792 F.3d 1363 (Fed. Cir. 2015)........................................................................19

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir 2016).........................................................10, 14, 15, 19

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)........................................................1, 11, 12, 16

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
   173 F.Supp.3d 717 (N.D. Ill. 2016) .................................................................13

*Lovelace v. Software Spectrum*,
   78 F.3d 1015 (5th Cir. 1996) .............................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)......................................................................................7

*Morales v. Square, Inc.*,
   75 F. Supp. 3d. 716 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir.
   2015), *cert. denied*, 136 S. Ct. 1461 (2016)......................................................8

*Parker v. Flook*,
   437 U.S. 584 (1978)..........................................................................................7

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .................8, 11, 17

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
   873 F.3d (Fed. Cir. 2017)................................................................................16

*In re TLI Commc'ns LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016)..........................................................................19

*Tuxis Technologies, LLC v. Amazon.com, Inc.*,
   No. 13–1771–RGA, 2015 WL 1387815 (D. Del. Mar. 25, 2015) ...........................13

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...................................5, 10, 17

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017).......................................................................15

## I.      SUMMARY OF THE ARGUMENT

Monitoring and controlling devices is an abstract idea. The asserted patents contain claims that comprise nothing more than functionally described, generic components used for their conventional purpose, with the end result being a "system" for remotely monitoring and controlling a thermostat. These claims are the quintessential example of claiming ends without claiming or even disclosing the means. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (holding claims to be patent ineligible because they were directed to a result rather than a means for achieving the result).

Accordingly, Central Security Group – Nationwide, Inc. ("CSG") moves to dismiss Ubiquitous' Complaint, (Doc. 2), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The claims of the asserted patents are directed to the abstract idea of monitoring and controlling devices. But sending electronic messages between two "units" to remotely monitor and control a thermostat is not a technological improvement, an inventive way of applying conventional technology, or even new as of November 18, 2004. Moreover, none of the claims recite any specific hardware or software; instead, the asserted patents' shared specification discloses only that the alleged invention uses generic computer components and software to perform conventional activities.

The asserted patents do no more than withdraw a basic idea (monitoring and controlling devices) from the public domain without disclosing any particularized application of that idea. Thus, the asserted patents are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. Resolving these issues does not require discovery or formal claim construction. To avoid wasting judicial and party resources and unnecessarily litigating an invalid patent, CSG thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II.     STATEMENT OF THE ISSUE

Should the Court therefore dismiss Ubiquitous' Complaint pursuant to Rule 12(b)(6) for failure to state a claim? Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The asserted patents are directed to the abstract idea of monitoring and controlling devices. The asserted patents do not include an inventive concept beyond that idea.

## III.    STAGE AND NATURE OF PROCEEDINGS

On July 17, 2018, Ubiquitous filed this lawsuit accusing CSG of infringing U.S. Patent Nos. 8,064,935 and 9,602,655 (the "asserted patents"). Ubiquitous accuses CSG of infringing "one or more claims of the '935 Patent, including Claim 19" and "at least Claim 1" of the '655 Patent by CSG's "Products and Services, that form a wirelessly controllable security system that incorporates a base unit . . . interfaced with an environmental device (security system and sensors)." Compl. ¶¶ 30, 45 (Doc. 2).

## IV.     THE ASSERTED PATENTS

The asserted patents are both entitled "Ubiquitous Connectivity and Control System for Remote locations," and they share the same specification. '935 Patent;'655 Patent. The applicants explained and admitted that systems for remotely controlling "smart appliances" existed in the prior art ('935 Patent at 1:51-57), but the goal of the alleged invention was to "allow the end-user to finally realize true global connectivity to and control of the home" (*id*. at 3:26-28).

Claim 19 of the '935 Patent, set forth below, is representative of the asserted claims:

19. A communication system having wireless connectivity, the communication system comprising:

   a base unit operatively interfaced with an environmental device, and configured
      to receive a current status of an environmental device;

> a transmitter associated with said base unit, and configured to send a first message to a remote unit having wireless connectivity, wherein the first message is a wireless message including the current status of the environmental device;
>
> a receiver associated with said base unit, and configured to receive a second message from the remote unit, wherein the second message is a wireless message including a command for the environmental device; and
>
> a controller operatively associated with the base unit and operatively connected with the environmental device, and configured to send the command to the environmental device.

*Id*. at cl. 19.

This claim consists of three main components: (1) "a base unit"; (2) "an environmental device" (*e.g.*, a thermostat); and (3) "a remote unit" (*e.g.*, a cellphone). The "base unit" is associated with "a transmitter" to transmit "message" about the thermostat to the "remote unit," "a receiver" to receive "commands" from the "remote unit," and "a controller" that "sends" these "commands" to the thermostat. Put simply, these generic components form a system for using one device to remotely monitor and control another.

The purported solution the applicants provided for remotely monitoring and controlling a thermostat consists of nothing more than the use of conventional components and processes. The applicants make this clear through their own language in the specification. For example, the claimed "base unit" consists of "either off-the-shelf integrated circuits combined with discreet components or complete modules provided by other original equipment manufacturers," (*id*. at 4:53-56), and "consists of an antenna" that is connected "either directly through a connector incorporated as part of the antenna or through a coaxial cable," (*id*. at 5:5-10). And the claimed "remote unit" can be a "Java/J2ME enable cellular telephones 30 having a keypad 32 with a plurality of keys 34 including a select button 36, and an LCD display 38 for displaying textual information 40 and graphical icons 42 responsive to commands received from the base control unit

3

16 or from other control units configured through base control unit 16 to work with system 10" (*id.* at 4:1-8), as depicted in Figure 2:



*Id.* at Fig. 2. That is, the remote unit is any cellular telephone with a display. *See id.*

The specification further explains that, for example, the "remote unit" communicates commands to the "base unit" "to enter an energy conservation mode." *See id.* at 6:50-54. First, "[t]he user moves the cursor of the LCD screen 38 until the desired operational icon 42 is highlighted" and presses the highlighted icon on the cellphone. *Id.* at 6:54-56. As a result, "[t]he function associated with the icon 42 by the applications software is triggered." *Id.* at 6:56-58. Then "[t]he applications software communicates the command to the base [unit] through the cellular telephone network." *Id.* at 6:58-61. Finally, upon receiving the command, the base unit "adjusts" the status of the desired device. *Id.* at 6:61-65. Thus, the applicants' purported solution consists of a cellphone communicating through the cellular telephone network with a wireless device that controls a thermostat.

### A.     Legal Standard.

#### 1.     This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a

complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## 2.    The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and

*abstract ideas.*" *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see*

*also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

**B.      The Asserted Patents are Invalid under 35 U.S.C. § 101.**

Ubiquitous' Complaint should be dismissed. The claims of the asserted patents referenced in the Complaint are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of these claims is directed to the abstract idea of monitoring and controlling devices. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Ubiquitous has failed to state a claim upon which relief may be granted, CSG respectfully requests that the Court grant its motion and dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6).

**1.      *Alice* Step 1: The asserted patents are directed to the abstract idea of monitoring and controlling devices.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the asserted patents are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of monitoring and controlling devices. *See Alice*, 134 S. Ct. at 2356-59; *Bilski*, 561 U.S. at 611.

**(a)** **The independent claims are directed to the abstract idea of monitoring and controlling devices.**

Claim 19 of the '935 Patent and Claim 1 of the '655 Patent, the only two claims mentioned in the Complaint, are representative of the asserted claims.[1] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether the claims are directed to an abstract idea, the Court must look past the claim language for the purpose of the claims to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All the claims recite is monitoring and controlling devices, consisting of nothing more than a set of generic functional components like a "base unit," a "transmitter," a "receiver," a "controller," a "remote unit," and an "environmental device":

| CLAIM LANGUAGE | CLAIMED IDEA |
|---|---|
| 19. A communication system having wireless connectivity, the communication system comprising: | |
| a base unit operatively interfaced with an environmental device, and configured to receive a current status of an environmental device; | generic device capable of interfacing with another device |
| a transmitter associated with said base unit, and configured to send a first message to a remote unit having wireless connectivity, wherein the first message is a wireless message including the current status of the environmental device; | a transmitter that transmits messages to a remote device |

---

[1] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

| CLAIM LANGUAGE | CLAIMED IDEA |
|---|---|
| a receiver associated with said base unit, and configured to receive a second message from the remote unit, wherein the second message is a wireless message including a command for the environmental device; and | a receiver that receives messages from a remote device |
| a controller operatively associated with the base unit and operatively connected with the environmental device, and configured to send the command to the environmental device. | a controller that controls another device |

| CLAIM LANGUAGE | CLAIMED IDEA |
|---|---|
| 1. A base unit configured to communicate with an environmental device and to communicate with a cellular remote unit having wireless connectivity capable of communicating from a geographically remote location, the base unit comprising: | generic device capable of interfacing with another device (*e.g.*, thermostat) |
| a first communication interface configured to receive environmental information from the environmental device and to send a control instruction to the environmental device; | generic computer interface for receiving and sending data |
| a wireless communication interface configured to send a first message to the cellular remote unit via a cellular communications network and to receive a second message from the cellular remote unit via the cellular communications network, | generic wireless interface for sending data to a remote device and receiving data from the remote device |
| wherein the first message is a first digital communications message including a representation of the environmental information, and | data representing a device status |
| wherein the second message is a second digital communications message including a command regarding the environmental device; and | data representing a command for another device |
| a microcontroller configured to process the second message, to provide the control instruction based on the command, and to send the control instruction to the environmental device via the first communication interface, and | generic processor |
| wherein the command is for the base unit initiated by a user from the cellular remote unit, and | user entering a command via generic cellphone |

| CLAIM LANGUAGE | CLAIMED IDEA |
|---|---|
| wherein the control instruction to the environmental device is associated with the command for the base unit, wherein the cellular remote unit is configured to determine position data of the cellular remote unit, and determine when the cellular remote unit is outside a geo-fence, wherein the cellular remote unit is configured to transmit a notification via a simple message service responsive to determining that the cellular remote unit is outside of the geo-fence. | conditional sending of commands if the remote device gets too far from the base unit |

At a high level, Claim 19 describes the most generic functional components of a system for monitoring and controlling devices. Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the system with conventional components like "base unit," "remote unit," "receiver," "transmitter," "controller," and "environmental device" does not make it any less abstract. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir 2016) ("Claims that 'amount to nothing significantly more than an instruction to apply [an] abstract idea . . . using some unspecified, generic computer' and in which 'each step does no more than require a generic computer to perform generic computer functions' do not make an abstract idea patent-eligible." (citing *Alice*, 134 S. Ct. at 2359-60)).

Claim 1 of the '655 Patent recites an additional conditional limitation regarding the location of the remote unit. Specifically, the claim states that the "remote unit [sends] a notification via a simple message service [when it is] outside of the geo-fence." This conditional limitation does not proffer any idea that was not routine, well-known, or conventional at the time of the invention. The specification explains that the claimed "geo-fencing" refers to the scenario in which "the remote control unit travels a distance that exceeds the programmed distance from the base control unit[;] the remote control unit reports this information to the base control unit." '655 Patent at 8:59-62. The purported solution to this problem is to "program" the "[g]eographic location

10

information . . . into the base control unit through a keypad" and "program" the "user-determined distance . . . into the remote control unit." *Id*. at 8:54-59. The "remote unit" uses conventional GPS technology to determine its own location (*id*. at 6:44-60), and if located outside the predefined distance, it sends a notification to the base unit. The applicants describe the system only at a high level of generality—that is, the claims cover only the resulting system the applicants envisioned, not how to implement it, much less how to do so in any non-conventional manner. *See Internet Patents*, 790 F.3d at 1348. There is no explanation, algorithm, or flow-chart as to how to "program" the generic "units" to effect this system. A patent may not claim a result, stripped of any application or implementation to achieve that result. *See id.*

The specification admits that systems for remotely controlling devices were routine and well-known at the time of the purported invention. '935 Patent at Background. The purported problem the applicants wanted to resolve was to "allow the end-user to finally realize true global connectivity to and control of the home." *Id*. at 3:26-28. But performing a task remotely does not confer patent eligibility. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—[does not make the patent eligible]."). Moreover, the applicants failed to disclose the details of how to achieve such "global connectivity" and instead describe and claim the system only at a high level of generality—that is, the claims cover only the resulting system the applicants envisioned, not how to implement it, much less how to do so in any non-conventional manner. *See Internet Patents*, 790 F.3d at 1348 (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation."). For example, the specification's explanation of how the "remote unit" controls the thermostat is that the user presses an icon on his/her cellphone, which causes

11

"[t]he applications software [to] communicate the command to the base [unit] through the cellular telephone network," and upon receiving the command, the "base unit" "adjusts" the thermostat. '935 Patent at 6:52-65. This describes the desired idea as an end-result, not any implementation of the idea. A patent may not claim a result, stripped of any application or implementation to achieve that result. *See Internet Patents*, 790 F.3d at 1348.

These claims recite the use of known components, performing basic functions, to allow remotely monitoring and controlling devices. For example, a person who has a thermostat at home wants to control the thermostat remotely. A control unit interfaces with the thermostat to monitor and control it. The person uses his cellphone to connect to the control unit to check on the status of the thermostat (it is set to 65 degrees in summer, but nobody is home), and then presses an icon on the cellphone to change the thermostat's status (increase to 75 degrees to avoid wasting energy). The cellphone transmits the command to the base unit, which then raises the set temperature. Claim 19 of the '935 Patent covers this idea, implemented using only generic computer components applied conventionally. Claim 1 of the '655 Patent adds that, after the system user uses their cellphone to transmit a command to the base unit and change the temperature setting at home, the base unit then raises the set temperature. The additional limitation in Claim 1 of the '655 Patent is that if the user's cellphone gets too far outside a set distance from the thermostat's control unit, the cellphone will alert the user. How that happens, however, is not disclosed, much less claimed.

Courts have found similar patent claims to be ineligible, *e.g.*, district courts have found that remotely accessing and controlling systems is an abstract idea. *See, e.g.*, *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F.Supp.3d 717, 727 (N.D. Ill. 2016) ("to solve a problem by allowing individuals to monitor their property remotely through the use of a computer network does not make the patents non-abstract") (collecting cases); *Gaelco S.A. v. Arachnid 360,*

*LLC*, 293 F. Supp. 3d 783, 792 (N.D. Ill. 2017) ("Nor does the fact that refereeing occurs remotely qualify as a technological advancement that makes the claims non-abstract."); *Tuxis Technologies, LLC v. Amazon.com, Inc.*, No. 13–1771–RGA, 2015 WL 1387815, at *2 (D. Del. Mar. 25, 2015) ("[T]he fact that [performance of the idea] occurs remotely and/or over the Internet does not make the claimed subject matter non-abstract."). In fact, a claimed invention's ability to operate remotely has played little to no role in district courts § 101 analyses. *See, e.g.*, *Becton, Dickinson & Co. v. Baxter Intern., Inc.*, No. 1:14–cv–222–LY, 127 F.Supp.3d 687, 692–93, 2015 WL 5148850, at *5 (W.D. Tex. Aug. 3, 2015) ("The fact that [an invention] is 'remote' is of no added consequence to the abstract nature of the concept."); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F.Supp.3d 553, 562 (D. Del. 2014) (patent claim "at its core, describes the implementation of the abstract idea of cataloguing documents to facilitate their retrieval from storage in the field of remote computing"). Logically, this makes sense; "[s]tating an abstract idea while adding the wor[d] '[remotely]' is not ... the sort of 'additional featur[e]' that provides any 'practical assurance that the [invention] is more than a drafting effort designed to monopolize the [abstract idea] itself." *Alice*, 134 S. Ct. at 2350–51.

The same is true of the Federal Circuit. For example, in *Electric Power*, the claims were directed to power-grid monitoring and focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). The Federal Circuit concluded that "collecting information," "analyzing information," and "presenting the results" are all "within the realm of abstract ideas," and "the combination of those abstract-idea processes" is "an abstract idea" as well. *Id*. at 1353-54. The Court reasoned that the claims did not provide "computer-functionality improvements," but instead, they used "existing computers as tools in aid of processes focused on abstract ideas."

13

*Id.* at 1354 (internal quotation omitted). Like the *Electric Power* claims, Claim 19 of the '935 Patent is abstract because it does not provide any improvement to computer-functionality, rather it recites *collecting* the status of a device, *transmitting* that status to another device, *receiving* a command from the user's cellphone to adjust the status, and *adjusting* the thermostat accordingly. *See id.* Claim 19 of the '935 Patent merely uses "existing computers as tools in aid of processes" such as *collecting*, *transmitting*, *receiving*, and *adjusting*, to implement the abstract idea of monitoring and controlling devices. *See id.*

In *Intellectual Ventures*, the invention was related to "automatic deferral and review of e-mail messages and other data objects in a networked computer system, by applying business rules to the messages as they are processed by post offices" and the claims generally recited "the patented system as a 'post office'—albeit an electronic one." *Intellectual Ventures*, 838 F.3d at 1317. The Federal Circuit agreed with the district court that "the asserted claims . . . are directed to human-practicable concepts, which could be implemented in, for example, a brick-and-mortar post office." *Id.* The Court further held that "the claims are directed to an abstract idea" because they are "directed to a conventional business practice—the screening of messages by corporate organizations—in the context of electronic communications," and held that "the claims are directed to an abstract idea." *Id.* at 1318.

Like the claims in *Electric Power*, *Intellectual Ventures*, and the various district court opinions above, Claim 19 of the '935 Patent is abstract because it simply takes the concept of monitoring and controlling devices, and attempts to implement it through existing computer and wireless technologies. The claims in *Intellectual Ventures* were directed to "a **conventional business practice** . . . in the context of electronic communications" (*id.* at 1318 (emphasis added)), whereas Claim 19 of the '935 Patent is directed to a **conventional human practice** in the context

14

of electronic communications. The idea claimed in Claim 19 of the '935 Patent is just as abstract as that of the *Intellectual Ventures* claims because it is "directed to human-practicable concept" of monitoring and controlling devices. *See id*. at 1317; *see also Becton*, 2015 WL 5148850 at *5.

Recent Federal Circuit cases finding claims patent-eligible at *Alice* step one are notably different from this case. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *McRO*, 837 F.3d 1299; *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). In those cases, unlike here, the claims recited "specific . . . improvement[s] in computer capabilities." *Enfish*, 822 F.3d at 1336 (emphasis added); *see also McRO*, 837 F.3d at 1313-14; *Visual Memory*, 867 F.3d at 1258 (finding that "claims focus on a 'specific asserted improvement in computer capabilities'—the use of programmable operational characteristics that are configurable based on the type of processor—instead of 'on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool'") (citation omitted); *Core Wireless*, 880 F.3d at 1362 (finding that the "asserted claims in this case are directed to an improved user interface for computing devices, not to the abstract idea of an index").

Claim 19 of the '935 Patent does not include any specific, unconventional limitations or non-generic components used to remotely monitor and control devices. Rather, all of the steps recited are directed to generic components like a "base unit," a "remote unit," and "an environmental device," and conventional functions like "receiv[ing]" status of device, "send[ing]" a message, and "send[ing]" a command. Thus, by only claiming the desired result—remotely monitoring and controlling devices—without describing any concrete, inventive roadmap for doing so, Claim 19 of the '935 Patent falls short of claiming eligible subject matter under § 101.

*See Internet Patents*, 790 F.3d at 1348; *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d at 910–11 (Fed. Cir. 2017).

**(b)      The remaining claims are similarly abstract.**

The remaining claims of the asserted patents, none of which are recited by the Complaint, are directed to the same abstract idea. Specifically, each of the other claims refers only to standard computing means to remotely monitor and control devices. For example, the claims describe a "base unit" and "remote unit" communicating through "SMS" ('935 Patent at cls. 1, 18), the "base unit" having "customizable application software" ('935 Patent at cls. 3, 14), the "remote unit" being a "cellular telephone handset" ('935 Patent at cls. 4, 15), the "commands" being "associated with an icon on the remote unit" ('655 Patent, cl. 3), and the "environmental device" being a generic "a light, thermostat, or an alarm system" ('655 Patent, cl. 14). These claims are thus indistinguishable from Claim 19 of the '935 Patent and Claim 1 of the '655 Patent.

In its Complaint, Ubiquitous specifically asserted only Claim 19 of the '935 Patent and Claim 1 of the '655 Patent. Compl. ¶¶ 32, 47 (Doc. 2). CSG has demonstrated in full that Claim 19 of the '935 Patent and Claim 1 of the '655 Patent are not patent eligible. The other claims of the asserted patents are substantially and substantively similar to Claim 19 of the '935 Patent and Claim 1 of the '655 Patent, and they are therefore not patent eligible for the same reasons. *See Content Extraction*, 776 F.3d at 1348. In fact, courts routinely invalidate patents based on representative claims. In *Content Extraction*, for example, the Federal Circuit invalidated "four patents contain[ing] a total of 242 claims" on the basis of two representative claims. *Id.* at 1346; *see also Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1378 (Fed. Cir. June 12, 2015) (holding the asserted patent invalid under § 101 and noting that "[n]one of the remaining asserted dependent or independent claims differ substantially from these [representative] claims."); *see also Phoenix Licensing*, 2017 WL 1065938 at *8–9.

16

2.      *Alice* **Step 2: The asserted patents' claims do not include any inventive concept because they contain only well-understood, routine, and conventional features.**

Because the asserted claims are directed to an abstract idea, the Court must next determine whether they contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, representative Claim 19 of the '935 Patent "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 19 of the '935 Patent is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

(a)      **The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter.**

Each of the generic components recited in Claim 19 of the '935 Patent is described only at a high level of generality and functionality, such as "a base unit," "a remote unit," "a receiver," "a transmitter," "a controller," and an "environmental device." But the claimed "base unit" unit consists of "either off-the-shelf integrated circuits combined with discreet components or complete modules provided by other original equipment manufacturers." '935 Patent at 4:53-56. The claimed "remote unit" can be any cellphone "responsive to commands received from the base control unit." *Id*. at 4:1-8. The "base unit" and the "remote unit" connect wirelessly using existing technologies "in a conventional manner." *Id.* at 4:18-25. And the "environmental device" can be a generic "HVAC unit, a water heater, a refrigeration appliance or other discrete device." *Id.* at 12:1-6.

The applicants' own characterizations and admissions demonstrate that the claimed components do not "improve the functioning of the computer itself" (*Alice*, 134 S. Ct. at 2359),

for example by disclosing an "improved, particularized method of digital data compression" (*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014)), or improve "the way a computer stores and retrieves data in memory" (*Enfish*, 822 F.3d at 1339). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices" (*id.* at 1338), holding instead that "they [we]re directed to a specific improvement to the way computers operate" (*id.* at 1336). In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claim 19 of the '935 Patent shows any unconventional methodology or structure that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the asserted patents is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

There is simply nothing "inventive" about using a known process (i.e., monitoring and controlling devices) and implementing it through the use of a generic remote device that can receive data from and transmit data to another device that is connected to and control a thermostat. Moreover, the abstract functional descriptions in Claim 19 of the '935 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures*, nothing in Claim 19 of the '935 Patent "contains an 'inventive concept' sufficient to 'transform' the claimed

abstract idea into a patent-eligible application." *Intellectual Ventures*, 838 F.3d at 1316 (citing omitted).

Courts have repeatedly held that the presence of generic hardware and software as recited in Claim 19 of the '935 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LLC v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). Claim 19 of the '935 Patent is thus ineligible under step two of *Alice*.

Claim 1 of the '655 Patent does not fare any better, as it recites each of its generic components only at a high level of generality and functionality, such as "communication interface," "environmental device," "control instructions," "wireless communication interface," "cellular remote unit," and "microcontroller." The claimed "geo-fencing" is implemented by "programing" the "[g]eographic location information . . . into the base control unit through a keypad" and "programing" the "user-determined distance . . . into the remote control unit." '655 Patent at 8:54-59. Then the "remote unit" uses the conventional GPS technology to determine its own location (*id*. at 6:44-60), and if located outside the predefined distance, it sends a notification to the "base unit." The patent does not disclose, much less claim, any particular method of programming the generic components to achieve the claimed abstract idea.

Additionally, there does not exist any factual disputes and thus granting this motion at the pleading stage is appropriate. The asserted patents' claims do not include any specific "mechanism" for achieving the idea of remotely monitoring and controlling devices—they just describe the end result. The specification describes the claimed elements, such as a "base unit" and "remote unit," as existing in the prior art and unbounded by any limitations, and thus, no factual dispute exists regarding the conventional nature of the claimed elements in the patents. *Cf. Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Patent eligibility . . . [can be] resolved on motions to dismiss . . . [w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field.").

The purported novelty of the asserted patents is the *result* of remotely monitoring and controlling devices, but the patents' claims do not describe any particular non-conventional *mechanism* for achieving the *result*. The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea. Because each of the asserted patents' claims are altogether devoid of any "inventive concept," they are all patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

## V.   CONCLUSION

For the foregoing reasons, CSG respectfully requests that the Court dismiss Ubiquitous' Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, CSG requests dismissal with prejudice.

Dated: October 4, 2018                                 Respectfully submitted,

                                                       HALL, ESTILL, HARDWICK, GABLE,
                                                          GOLDEN & NELSON, P.C.


                                                       By: */s/ Keith A. Wilkes*
                                                       _____

20

Keith Wilkes, OBA No. 6750
320 S. Boston Avenue, Ste. 200
Tulsa, Oklahoma 74103
Telephone: (918) 594-0709
Facsimile: (918) 594-0505
kwilkes@hallestill.com

**FISH & RICHARDSON P.C.**

By:   */s/ Bret T. Winterle*
     Bret T. Winterle
     *(Pro Hac Vice Pending*)
     Texas Bar No. 24084249
     1717 Main Street, Suite 5000
     Dallas, Texas 75201
     (214) 747-5070 – Telephone
     (214) 747-2091 – Facsimile
     winterle@fr.com

**COUNSEL FOR CENTRAL SECURITY
GROUP – NATIONWIDE, INC.**

**CERTIFICATE OF SERVICE**

☒  I hereby certify that on October 4, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Chad C. Taylor

☒  I hereby certify that on October 4, 2018, I served the foregoing document by mail on the following, who are not registered participants of the ECF System:

   James F. McDonough, III
   Jonathan R. Miller
   Travis E. Lynch

           */s/ Keith A. Wilkes*
           Keith A. Wilkes