## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UBIQUITOUS CONNECTIVITY, LP, | CIVIL ACTION NO. |
| Plaintiff, | 4:18-cv-00368-JED-FHM |
| v. | |
| CENTRAL SECURITY GROUP - NATIONWIDE, INC., | |
| Defendant. | |

## UBIQUITOUS CONNECTIVITY'S OPPOSITION TO
## CENTRAL SECURITY GROUP – NATIONWIDE, INC.'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Dkt. No. 13]

Plaintiff UBIQUITOUS CONNECTIVITY, LP (hereinafter, "Ubiquitous" or "Plaintiff") hereby opposes the Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim filed by CENTRAL SECURITY GROUP - NATIONWIDE, INC. (hereinafter, "CSG") that was filed on October 4, 2018 (Dkt. No. 13).

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. LEGAL AUTHORITY .......................................................................................... 2

    A.    MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6). ............................... 2

    B.    PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. §101. ............................ 2

III. THE MOTION IS PREMATURE DUE TO CLAIM CONSTRUCTION AND FACTUAL DISPUTES. . 5

    A.    THE EXISTING CLAIM CONSTRUCTION DISPUTES MUST BE RESOLVED PRIOR TO DETERMINING WHETHER THE CLAIMS ARE PATENT INELIGIBLE. ............................ 5

    B.    THERE ARE FACTUAL DISPUTES AS TO WHETHER THE CLAIMS WERE WELL-UNDERSTOOD, ROUTINE, AND CONVENTIONAL. ........................................................ 7

IV. THE CLAIMS OF THE PATENTS-IN-SUIT ARE PATENT ELIGIBLE. .................... 9

    A.    CSG'S ALLEGED "REPRESENTATIVE CLAIMS" ARE FAR FROM "REPRESENTATIVE." ................................................................................................. 9

    B.    THE PATENTS ARE DIRECTED TO THE CREATION OF A SET OF "ON-DEMAND BIDIRECTIONAL COMMUNICATION" TECHNOLOGIES, NOT ANY ABSTRACT IDEA. .. 10

        1.    The Technical Problems: Then Existing "OEM" Base Unit Components Were Unable To Facilitate Bilateral Communications With Cellular Telephones With Then Existing Communication System Technologies. ....... 11

        2.    The Technical Solutions: Integration Of Cellular, User-Friendly (Automated) Two-Way Communications Into A Base Unit At A Remote Location. .......... 13

        3.    CSG's Characterizations of The Patents-In-Suit Are Plainly Wrong. .......... 15

        4.    The Combination Of Physical Elements Describes A Machine That By Its Very Nature Cannot Be "Abstract." .................................................. 16

    C.    EVEN IF THE COURT FINDS THAT THE PATENTS-IN-SUIT ARE DIRECTED TO AN ABSTRACT IDEA, THE CLAIMS DISCLOSE "INVENTIVE CONCEPTS." ....................... 16

        1.    The Inventive Concepts: The Base Unit and Cellular Remote Unit Each Embody At Least Three "Inventive Concepts." .............................................. 17

        2.    Another Inventive Concept: The Combination of The Claim Elements. ...... 18

    D.    THE PATENTS-IN-SUIT ARE MORE LIKE THOSE DETERMINED TO BE CONCRETE WITH "INVENTIVE CONCEPTS" THAN THOSE DEEMED INVALID. ............................ 19

V. CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*A Pty Ltd. v. Facebook, Inc.*, No. 1:15-CV-156 RP, 2015 WL 5883331 (W.D. Tex. Oct. 8, 2015) ................................................................................................................ 6, 7

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1354 (2018) ............................................... 6, 7, 8

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336-1341 (Fed. Cir. 2013) ....................................................................................................... 8

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) .......................... 3

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) ................................................................................................. 3, 4, 11, 18

*Allergan, Inc. v. Apotex Inc.,* 754 F.3d 952 (Fed. Cir. 2014) ....................................... 2

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), *pet. for cert. denied, Openet Telecom, Inc v. Amdocs (Israel) Ltd.* (U.S. Nov. 27, 2017) (17-136) . 3, 17, 18

*BanCorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266 (Fed. Cir. 2012) .. 5, 7

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).. 4, 16, 18

*Becton, Dickinson & Co. v. Baxter Intern., Inc.*, 127 F.Supp.3d 687 (W.D. Tex. Aug. 3, 2015)  19

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1369 (2018) .............................................................................................. passim

*Blackbird Tech LLC v. Niantic, Inc.*, 2018 LEXIS 186629 (D. Del. Oct. 31, 2018) ................... 11

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ......................................... 18

*Burr v. Duryee*, 68 U.S. 531 (1863) ..................................................................................... 16

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) ................................................. 20

*Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F.Supp.3d 553 (D. Del. 2014) ............................. 19

*Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) ...................... 10

*Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. __, 135 S.Ct. 1920, 191 L.Ed.2d 883 (2015) 2

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014)  5, 16, 20

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) .............. 3, 4

*Corning v. Burden*, 56 U.S. 252 (1853) ................................................................................. 16

*Data Engine Technologies LLC v. Google LLC,* 2018 U.S. App. LEXIS 28412 (Fed. Cir. Oct. 9, 2018) ................................................................................................................ 19

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) ....................................................................... 3

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, No. 2017-1483, 2018 U.S. App. LEXIS 11231 (Fed. Cir. May 1, 2018) ............................................................................................... 9

*Electric Power Group, LLC v. Alstom S.A.,* 830 F.3d 1350 (Fed. Cir. 2016) ............................ 20

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ......................................... 9, 11

*Gaelco S.A. v. Arachnid 360, LLC*, 293 F. Supp. 3d 783 (N.D. Ill. 2017) ................................ 19

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016) ...................................... 7

*In re Nuijten*, 500 F.3d 1346 (Fed. Cir. 2007) ....................................................................... 16

*In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016) ............................. 20

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) ................................................................................................................................. 6

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir 2016) ........................ 20

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ................ 3, 4, 20

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F.Supp.3d 717 (N.D. Ill. 2016) .... 19

*KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ................................................................. 18

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012) .......... passim

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) .............. 4, 11, 15

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ................................................................. 2

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314 (Fed. Cir. 2016) ........... 8

*Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995) ....................................... 6

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ........................................ 6, 10

*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) ........................................... 4

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d (Fed. Cir. 2017) ...................... 20

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 2017 U.S. App. LEXIS 20333 (Fed. Cir. Oct. 18, 2017) ............................................................................................... 11

*Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, 2011 U.S. Dist. LEXIS 12375 (N.D. Okla. Feb. 2, 2011) ............................................................................................................................................ 2

*Thales Visionix Inc. v. U.S.*, 850 F.3d 1343 (Fed. Cir. 2017) ....................................................... 4

*Tuxis Technologies, LLC v. Amazon.com, Inc.*, 2015 WL 1387815 (D. Del. Mar. 25, 2015) ...... 19

*Two-Way Media Ltd. v. Comcast Cable Communs., LLC*, 874 F.3d 1329 (Fed. Cir. 2017) .... 3, 16

*Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709 (Fed. Cir. 2014) ................................................. 20

*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) ................................... 2, 3

*Wenger Mfg. v. Coating Machinery Sys.*, 239 F. 3d 1225 (Fed. Cir. 2001) .................................. 9

**Statutes**

35 U.S.C. §101 ................................................................................................................. 1, 2, 5, 16

35 U.S.C. §282(a) ........................................................................................................................... 2

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................................ 2

Fed. R. Civ. Proc. 12(d) ................................................................................................................. 2

## TABLE OF ABBREVIATIONS

| "Ubiquitous" | Plaintiff UBIQUITOUS CONNECTIVITY, LP |
|---|---|
| "CSG" | Defendant CENTRAL SECURITY GROUP - NATIONWIDE, INC. |
| "'935 Patent" | U.S. Patent No. 8,064,935 |
| "'655 Patent" | U.S. Patent No. 9,602,655 |
| "Patents-in-Suit" | '935 Patent and '655 Patent collectively (to be found at Dkt. No. 1-2) |
| "McDonough Decl." | Declaration of James F. McDonough, III, dated November 5, 2018 (attached hereto) |
| "Zat. Decl." | Declaration Of Ivan Zatkovich In Support Of Ubiquitous Connectivity's Opposition To Central Security Group's Motion To Dismiss (dated November 5, 2018, attached to McDonough Decl. as Exhibit C) |
| "POSITA" | person of ordinary skill in the art |

## I.    INTRODUCTION

Today, it is fashionable for defendants to file 35 U.S.C. §101 at the beginning of a patent case.  This type of motion presents an easy opportunity to persuade a court to dismiss a case prior to it truly understanding the patents, including knowing what the claims mean, grasping the state of technology at the filing date, and determining what factual issues must be resolved by a jury. This case is no different, and CSG has seized on the opportunity to mischaracterize the claims of the Patents-in-Suit as being directed to nothing more than "monitoring and controlling appliances," an alleged "abstract idea" that is supposedly bereft of "an inventive concept beyond that idea."

At Step 1 of *Alice*, CSG has applied an inappropriate level of abstraction to the scope of the claims such that its description of the claims is "untethered from the language of the claims," which Courts have found fatal to such motions.  The Patents-in-Suit are actually directed to the creation of a set of "on-demand bidirectional communication" technologies, not any abstract idea. The patents provide a solution to what was a technical problem in the year 2004—existing communication system technologies could not facilitate on-demand bilateral communications between a cellphone and conventional "base unit" components in a network.  Ubiquitous' solution was integrating cellular, user-friendly two-way communications into a base unit.  This is far from the mere provision of "remote access" to which CSG tries to limit the inventions.   For these reasons, the Court need not proceed to Step 2 of *Alice* and should instead deny CSG's Motion.

Even if the Court reaches Step 2, at least three "inventive concepts" are embodied in the claims of the Patents-in-Suit at the "base unit," including (1) two-way digital communications with a cellular phone, (2) unsolicited event notification with a cellular telephone, and (3) geo-fence based communications within these constructs. And the combination of these three is indisputably inventive itself.  CSG's motion thus also fails at Step 2.  Finally, and even setting the merits aside, CSG's motion is premature because there are pending claim construction and factual disputes.

## II.   LEGAL AUTHORITY

### A.   MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6).

Regional circuit law applies to a §101 motion brought under Fed. R. Civ. Proc. 12(b)(6). *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1257 (Fed. Cir. 2017). The Court must "accept all the well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." *Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, 2011 U.S. Dist. LEXIS 12375, *7 (N.D. Okla. Feb. 2, 2011). The burden of proof that claims of a patent are invalid lies with the party asserting invalidity. *See* 35 U.S.C. §282(a) ("The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011). When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Proc. 12(d); *Southcrest*, 2011 U.S. Dist. LEXIS at *8.

### B.   PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. §101.

Invalidity is a question of law which may depend upon underlying questions of fact. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). When the validity of an issued patent is challenged, the analysis starts with the presumption that the patent is valid and that the accused infringer's burden of overcoming this presumption of validity must be proven by clear and convincing evidence. 35 U.S.C. § 282(a); *i4i Ltd. P'ship*, 564 U.S. at 97; *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. __, 135 S.Ct. 1920, 1929 (2015); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014). Section 101 of the Patent Act provides: "Whoever invents or discovers any new and useful process, ***machine***, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. §101 (emphasis added). The Supreme Court has carved out three exceptions to the broad §101 statutory categories of patent eligible subject matter, namely

that "laws of nature, physical phenomena, and abstract ideas" may not be patented. *Bilski,* 561

U.S. at 601-602); *see also Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356,

1361 (Fed. Cir. 2018)).  The Supreme Court's decisions in *Mayo* and *Alice* have established the

test to be used applying the exclusions (the "*Alice* Test").  *Mayo Collab. Serv. v. Prometheus Lab.,*

*Inc.*, 566 U.S. 66, 77-80 (2012); *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 134 S.Ct.

2347, 2360, 189 L.Ed.2d 296 (2014).

      The *Alice* Test proceeds on a claim-by-claim basis and requires the party bearing the burden

of proving invalidity of each claim. *Id.*

> The "framework for distinguishing patents that claim laws of nature, natural
> phenomena, and abstract ideas from those that claim patent-eligible applications of
> those concepts" comprises two steps. [*Alice*] at 2355. The first step requires courts to
> "determine whether the claims at issue are directed to one of those patent-ineligible
> concepts." [*Alice*] If they are, the court must then analyze whether the claim elements,
> either individually or as an ordered combination, contain an "inventive concept" that
> 'transform[s] the nature of the claim' into a patent-eligible application." [*Alice*]
> (quoting *Mayo*, 566 U.S. at 72, 78).

*Visual Memory LLC*, 867 F.3d at 1258; *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838

F.3d 1253, 1257 (Fed. Cir. 2016) (referring to step one as the "abstract idea" step and step two as

the "inventive concept" step).  Both steps of the *Alice* Test are informed by the claims and the

specification.  *See Amdocs (Israel) v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016).

      "Under Alice step one, 'the claims are considered in their entirety to ascertain whether [the

claims] character as a whole is directed to excluded subject matter.'" *Two-Way Media Ltd. v.*

*Comcast Cable Communs., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (quoting *Internet Patents*

*Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015)).  "We look to whether the

claims in the patent focus on a specific means or method, or are instead directed to a result or effect

that itself is the abstract idea and merely invokes generic processes and machinery."  *Id*.  If it is

determined that the claims at issue are not directed to an abstract idea, there is no need to proceed

to Step 2. *See Core Wireless*, 880 F.3d at 1361; *see also RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("If the claims are not directed to an abstract idea, the inquiry ends."); *Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) ("Because we find the claims are not directed to an abstract idea, we need not proceed to step two.").

If the claim falls into one of the exceptions, then Step 2 of the *Alice* Test requires that each element of the claim must be further evaluated both by itself and in an ordered combination to determine whether the elements transform the claim to such an extent that it nevertheless claims only subject matter that is patentable. *Alice*, 134 S.Ct. at 2355. Step 2 of the *Alice* Test involves the search for an "'inventive concept' sufficient to 'transform the nature of the claim into a patent-eligible application.'" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *Alice*, 134 S.Ct. at 2355). As such, a claim which is deemed to be directed to an abstract idea in Step 1 of the *Alice* Test may nevertheless remain a patent-eligible application of that abstract idea by, for example, improving upon existing technology or integrating the abstract idea into a new combination of steps in a way that is unconventional in the field. *Mayo*, 566 U.S. at 79-85. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. … [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether a claim is unconventional is a highly-factual inquiry and "that pragmatic analysis of §101 is facilitated by considerations analogous to those of §§ 102 and 103 as applied to the particular case." *Internet Patents Corp.*, 790 F.3d at 1347; *see also Berkheimer*, 881 F.3d at 1368 ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" to "be proven by clear

and convincing evidence.").

### III.   THE MOTION IS PREMATURE DUE TO CLAIM CONSTRUCTION AND FACTUAL DISPUTES.

A determination of patentability at the pleadings stage of this litigation is premature. First, there are claim construction disputes that must be resolved before any claims can be assessed for inventiveness, *i.e.*, the Court must determine the exact meanings of the claims before they can be properly assessed. Second, the expert opinions on patentability supporting this Opposition, including those regarding the technological field at issue, the state of that technology at the priority date for the Patents-in-Suit, and the claimed solutions to those technical problems, are the only opinions of record that shed light on the specification and technologies at issue as they would have been interpreted by persons of ordinary skill at the priority date of the Patents-in-Suit.[1]

#### A.   THE EXISTING CLAIM CONSTRUCTION DISPUTES MUST BE RESOLVED PRIOR TO DETERMINING WHETHER THE CLAIMS ARE PATENT INELIGIBLE.

Based on communications that Plaintiff has had with the CSG, coupled with the claim construction set forth in CSG's Motion, it is clear that there are claim construction disputes that must be resolved prior to any analysis of the claims under 35 U.S.C. §101.  The Federal Circuit has recognized that claim construction "will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *BanCorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273-1274 (Fed. Cir. 2012); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  "If there are claim construction disputes at the Rule 12(b)(6) stage, we have held that either the court must proceed by adopting the non-moving party's constructions, or the court must

---

[1] Even assuming the CSG submits a rebuttal declaration from a competing expert, that would merely complicate but not resolve the factual issues on patentability that are now before this Court.

resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1354 (2018) (internal citations omitted).  When there are salient claim construction disputes at the pleading stage, denial of a §101 motion is warranted.  *See Netflix, Inc.*, 2016 U.S. Dist. LEXIS 163110 at *11-*13; *A Pty Ltd. v. Facebook, Inc.*, 2015 WL 5883331, *5-*6 (W.D. Tex. Oct. 8, 2015).

It is an established tenet of patent law that claims define the inventions of a patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*).  In most cases, ascertaining the meaning of the claims requires the court to consider "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314 (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc*., 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  The starting point for the Court's analysis is the available intrinsic evidence relating to the patent.  *See id.* at 1317.  Extrinsic evidence, such as the background science or the meaning of a term in the relevant art, may be considered to understand what a disputed claim term would have meant to a person of ordinary skill in the art (a "POSITA").  *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed. Cir. 1995).  In analyzing the claim language, the Court must analyze the context in which the term appears and other claims of the patent to gain insight on the patentee's intention for claim definition.  *Phillips*, 415 F.3d at 1313.

In its Motion, CSG asks this Court to accept its meanings for the claim language of each alleged element of Claim 19 of the '935 Patent and Claim 1 of the '655 Patent.  *See* Motion, at pp. 8-10 (tables listing the claim language and the "[c]laimed [i]dea," or in other words, the alleged

meaning of that claim language).[2]  Ubiquitous asked CSG to stipulate to those constructions.  *See* Exhibit A[3] at pp. 1-3. But CSG refused. *See* Exhibit B at pp. 1-2.[4]  Ubiquitous submits its preliminary claim constructions for eleven common terms of the patents at Appendix A.  Given that these constructions differ dramatically from those presented by CSG in its Motion, *compare* Appx. A *with* Motion, at pp. 8-10, there is undeniably a dispute.

Here, it is obvious that the parties disagree on the meanings of the claim elements (and even what those elements are), which distinguishes this case from those in which there is no dispute over claim construction. *See e.g., Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016).  As the record stands, there is no way for the Court to decide this issue without claim construction.  *See BanCorp Servs., LLC*, 687 F.3d at 1273-1274 (claim construction ordinarily necessary prior to a §101 analysis); *see also Netflix, Inc.*, 2016 U.S. Dist. LEXIS 163110 at *11-*13; *A Pty Ltd.*, 2015 WL 5883331 at *5-*6.  Alternatively, the Court could accept Ubiquitous' claim constructions (*see Aatrix Software, Inc.*, 882 F.3d at 1125), or CSG could stipulate to them, which would lead to only one conclusion—the claims are not directed to an abstract idea.

### B.  THERE ARE FACTUAL DISPUTES AS TO WHETHER THE CLAIMS WERE WELL-UNDERSTOOD, ROUTINE, AND CONVENTIONAL.

The current briefing also highlights the fact that there are factual disputes that must be

---

[2] For example, CSG claims the language "wherein the control instruction to the environmental device is associated with the command for the base unit, wherein the cellular remote unit is configured to determine position data of the cellular remote unit, and determine when the cellular remote unit is outside a geo-fence, wherein the cellular remote unit is configured to transmit a notification via a simple message service responsive to determining that the cellular remote unit is outside of the geofence" means "conditional sending of commands if the remote device gets too far from the base unit." Motion, at p. 10.

[3] Any reference to Exhibit___ or Appendix___ in this Opposition refers to that exhibit or appendix as cited and authenticated in the McDonough Decl.

[4] In its letter, CSG did respond with a construction of "SMS (i.e., text messaging)" for the term "simple message service." *See* Ex. 2, at p. 2. This construction is different from that which it proposes in its Motion, *compare id. with* fn. 2, and it is also different than Ubiquitous' construction for that term.  *See* Appx. A, p. 1; *see also* Zat. Decl., §VII.A

resolved before the Court can rule on CSG's Motion.  That is because

> [w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination. Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art.  The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.

See Berkheimer, 881 F.3d at 1369; see also Aatrix Software, Inc., 882 F.3d at 1128; Mortgage Grader, Inc. v. First Choice Loan Servs. Inc., 811 F.3d 1314, 1325 (Fed. Cir. 2016); Accenture Global Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1340-1341 (Fed. Cir. 2013). These cases hold that the question of whether the claim limitations involve more than the performance of well understood, routine, and conventional activities is a factual inquiry examined through the lens of a POSITA.  Berkheimer, 881 F.3d at 1368 ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.").  Disputes of fact must be resolved prior to rendering claims ineligible pursuant to a dispositive motion.  Id.

Ubiquitous' expert has provided a thorough declaration explaining the technological field the subject claims cover (as understood by a POSITA[5]) and the state of that technology at the priority date of the patents.  See, infra, Section IV.B.1.  It also describes the unconventional nature of many of the claim elements and how their use in the claims were not routine nor well-known. See, infra, Section IV.B-C.  This declaration, discussed in more detail below, disputes all of CSG's positions on these same subjects, thus highlighting the factual issues that must be resolved before the Court can rule on the Motion.  At best, CSG's motion is premature.  At worst, CSG has no

---

[5] A POSITA for these patents "would have a bachelor's degree in electrical engineering or computer science and two years of industry experience in the field of computers and communications." Id.

evidence to support its contentions at all.  Either way, CSG's Motion should be denied.

## IV.  THE CLAIMS OF THE PATENTS-IN-SUIT ARE PATENT ELIGIBLE.

Contrary to what the Court might glean from CSG's Motion, *Alice* does "not . . . broadly hold that all improvements in computer-related technology [hardware and software] are inherently abstract and, therefore, must be considered at step two." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  It is "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." *Id.* (emphasis added).  The invention's **ability** to run on a general purpose computer does not doom the claims. *Id.* at 1338.  "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to 101 swallow the rule." *Id.* at 1337.  The Court must look at **each claim** individually in view of the specification.

### A.  CSG'S ALLEGED "REPRESENTATIVE CLAIMS" ARE FAR FROM "REPRESENTATIVE."

CSG claims that because "Claim 19 of the '935 Patent and Claim 1 of the '655 Patent" are "the only two claims mentioned in the Complaint," they are representative of the asserted claims.[6] This is wrong.  Ubiquitous disputes that Claim 19 of the '935 Patent and Claim 1 of the '655 Patent are representative—they are not. "Under the doctrine of claim differentiation, each claim in a patent is presumptively different in scope." *Wenger Mfg. v. Coating Machinery Sys.*, 239 F. 3d 1225, 1233 (Fed. Cir. 2001) (*citing Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182,

---

[6] Claim 19 of the '935 Patent and Claim 1 of the '655 Patent were not chosen because they are representative of other claims or because those are the only claims infringed.  One claim from each of the patents is listed in the Complaint because that is what the plausibility standard of *Iqbal/Twombly* requires.  Ubiquitous must only identify the asserted patents, identify the accused products, and allege that each and every element of at least one claim of the patent be met. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, No. 2017-1483, 2018 U.S. App. LEXIS 11231, *7 (Fed. Cir. May 1, 2018).  When infringement contentions are due in this matter, and not before, that is the time that all asserted claims must be disclosed.

1187 (Fed. Cir. 1998)). Moreover, "[t]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315. Courts may only treat claims as representative "in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer*, 881 F.3d at 1365. Nor is a claim "representative simply because it is an independent claim." *Id*. The other independent and dependent claims are distinct and claim unique limitations as compared to the alleged "representative claims." As proof, Appendix B to this Opposition outlines each of the differences and unique elements required in Claims 1-18 and 19-20 of the '935 Patent (as compared to Claim 19), *see* Appx. B, Table 2, Co. 3, and Claims 2-24 of the '655 Patent (as compared to Claim 1). *See* Appx. B, Table 1, Col 3. For these reasons, Claims 19 and 1 are not "representative claims."

### B. THE PATENTS ARE DIRECTED TO THE CREATION OF A SET OF "ON-DEMAND BIDIRECTIONAL COMMUNICATION" TECHNOLOGIES, NOT ANY ABSTRACT IDEA.

The '935 and '635 Patents are directed to the creation of "on-demand bidirectional communication" technologies that have various features (as identified individually by each claim). *See* Zat. Decl., §VIII.A.v. The claims are not, as CSG characterizes them, directed to "monitoring and controlling devices." *See* Zat. Decl., §IX.A.i. That myopic view is mere posturing by CSG— an overgeneralized attempt to render these inventions invalid by branding the claims "abstract."[7] The specification itself is dispositive to the inquiry. The "Field of Invention" section of the patents disclose that "the system relates to on demand bidirectional communication between a remote

---

[7] This is further supported by CSG's own communications with Ubiquitous. In its Motion, CSG asks the Court to accept their view of meaning of elements in each of Claim 1 and Claim 19. *See* Motion, pp. 8-10 (tables of claim elements). But when asked to commit to those, CSG rebuffed Ubiquitous' request because CSG knows the elements of the claims are not "generic" devices and electronics. *See, supra,* Section III.A and cited exhibits.

access unit and a multifunctional base control unit in a geographically remote location." '655 Patent at 1:22-26; *see also* Zat. Decl., §V.A.

CSG takes the positions it does in its Motion because the key to Step 1 of the *Alice* Test is determining "'whether the focus of the claims is on the specific asserted improvement in computer capabilities' or whether 'computers are invoked merely as a tool.'" *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 2017 U.S. App. LEXIS 20333, *13 (Fed. Cir. Oct. 18, 2017) (*quoting Enfish, LLC*, 822 F.3d at 1335-1336). It is important to recognize the danger of overgeneralizing the claims at Step 1. *See Mayo*, 566 U.S. at 71 ("The Court has recognized, however, that too broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."); *Alice*, 134 S.Ct. at 2354 ("we tread carefully in construing this exclusionary principle lest it swallow all of patent law."); *McRO, Inc.*, 837 F.3d at 1313 ("We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.").

But CSG makes the fatal mistake of applying "an inappropriate level of abstraction such that its description of the claims is 'untethered from the language of the claims.'" *See Blackbird Tech LLC v. Niantic, Inc.*, 2018 LEXIS 186629, *8 (D. Del. Oct. 31, 2018) (*quoting Enfish, LLC*, 822 F.3d at 1337). The claims here cover specific devices configured in specific ways, to create session based bidirectional communications between a multifunctional base unit and a cellphone, which were otherwise unable to communicate. *See* Zat. Decl., §V.III.A.ii.

      1.   **The Technical Problems: Then Existing "OEM" Base Unit Components Were Unable To Facilitate Bilateral Communications With Cellular Telephones With Then Existing Communication System Technologies.**

The state of communications technology in 2004 is summarized by Dr. Zatkovich. *See* Zat. Decl., §IV. This summary is important because in order to properly assess the claims at issue

here, the Court must understand the state of that technology in 2004, including the state of control systems (polling versus event driven systems) and the applications of those systems at the time. *See* Zat. Decl., §IV.A.i-iii (explaining the same).   That background, with reference to the "Background of The Technology" section in the patents, is detailed by Dr. Zatkovich.   *Compare id.* (explaining the technological state of the systems referenced in the patent as of 2004) *with* '655 Patent, 1:30-3:14 ("Background of The Technology"); *see also* Zat. Decl., §V.B.  The Court must also understand the communication paradigms that then existed within control systems.  Those include one-way versus two-way (or bidirectional) communications, transmission range considerations for various communication types, early interactive telephone-based systems, and the history of smartphone development, which are also detailed by Dr. Zatkovich.  *See* Zat. Decl., §IV.B.i-iv (explaining the same).  Finally, the Court must have the requisite background regarding the 2004 state of location detection and geofencing, which includes understanding location trilateration, GPS systems, cellular tower technology, and geofencing. *See* Zat. Decl., §IV.C.i-iv.

In 2004, it is clear that "OEM" base unit systems were unable to create session-based communications with cellular telephones prior to the inventions of the '935 and '655 Patents.  *See* Zat. Decl., §IV.B.iv.  It was never done because then-existing technology did not allow it.  *See* Zat. Decl., §VIII.A.ii.a (explaining the same).  To situate the Court in time, the Patents-in-Suit "were filed in November 2004 but the first iPhone did not become available until January 2007. Although the iPhone was not the first 'smartphone,' it was the first example of what we now consider to be a modern smartphone." *Id.*, §IV.B.iv.  Cellular telephones did not have "apps" as we know them today.  Additionally, as of 2004, "then-existing thermostats typically monitored ambient temperature and maintained that temperature within a predetermined range."  *Id.*, §V.B. And although "progress was being made toward more sophisticated forms of remote monitoring

**UBIQUITOUS CONNECTIVITY'S OPPOSITION TO CENTRAL SECURITY GROUP – NATIONWIDE, INC.'S RULE 12(b)(6)
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Dkt. No. 13]**

and control (e.g., land-line connectivity to a home monitoring and control system," *id.* (*citing* '655

Patent, 1:64-67), the "then-existing land-line based solutions had significant drawbacks," *id.*,

including the fact that they used "'tones or cryptic, hard-to-understand, digitized voice prompts.'"

*Id.* (citing '655 Patent, 2:46-55). Power-line based systems also were in development but were

limited to intra-building communication, and although there was commercial interest in internet

based systems, there was serious drawbacks to that type of system. *Id.* The Patents-in-Suit also

> disclose the then-existing use of cellular networks with monitoring and control systems but observe that these systems were crude and inconvenient to use because they either offered one-way communication or very unfriendly two-way communication. *See* 2:46-51 (disclosing the existence of inferior telephone interfaces) and 3:4-8 (disclosing use of a cellular phone but with the same shortcomings of other telephone interfaces). *See also* 7:15-22 (then-existing systems utilizing a cell phone required a user to dial in to a base unit, press telephone keypad keys to create touch-tone (DTMF) sounds that would be received and interpreted by the base unit, and then manually disconnect from the base unit when communication is complete).
>
> In another example, the Ubiquitous Patents disclose the then-existing use of a "control architecture" including a one-way communication of commands to a device under control. *See* 2:17-20. The Ubiquitous Patents also disclose then-existing bi-directional communications in the limited context of Internet-based communications. *See* 2:65-3:3. By contrast, then-existing telephone or mobile device based communications disclosed by the Ubiquitous Patents involve one-way techniques (e.g., DTMF/keypad tones) or two-way techniques with significant shortcomings (e.g., "hard-to-understand digitized voice prompts"). *See* 2:46-52. Thus, each approach had identified shortcomings.

*See* Zat. Decl., §VIII.A.ii.a. These problems were overcome by Ubiquitous.

### 2. <u>The Technical Solutions</u>: Integration Of Cellular, User-Friendly (Automated) Two-Way Communications Into A Base Unit At A Remote Location.

Only with this background, can the Court understand why the patents were written the way

they were: which was to inform a POSITA of technical solutions to overcome then-existing

technical problems in bidirectional control systems. *See* Zat. Decl., §VI. A POSITA would

understand that, "[a]lthough the context of the Ubiquitous Patents' invention is home or business

appliance monitoring and environmental control, the [Patents-in-Suit] are focused on only one

aspect of that industry, and that is the integration of an incompatible communication device (a cellular phone) into that space." *See* Zat. Decl., §V.C. (and related discussion).

"The [Patents-in-Suit] reflect improvements over the 2004-era state of the art regarding structures and features in a base unit including interfacing cellular communications with computing devices." *See* Zat. Decl., §VIII.A.ii.b.[8]   The custom "base unit" is disclosed at Figure 4 of the patents. *Id.* The "subsystems" disclosed, and how a POSITA would implement them with hardware and software, are expressly disclosed in the specification. *Id.* "Thus, the innovations that went into creating the base unit reflected the key structural improvements within a base station for facilitating improved communication through on-demand, bi-directional command communications." *Id.* (discussing the teachings of the specification).

Although the inventions of the Patents-in-Suit "can be created from components available from original equipment manufacturers (OEMs)," those components could not "simply be combined like puzzle pieces to achieve a functioning result." *Id.* The teachings of the Patents-in-Suit would have to be followed, *e.g.,* the implementation details for sending a message from a base unit to a remote unit, the configuration of the base unit to receive simple messages from a wireless interface, and other structural improvements within a base system.  *Id.*  Each limitation of the alleged "representative claims" are written to overcome the shortcomings in the art.  *See id.* (Table1 and Table 2, listing claim language and the technical problem it overcomes).  Contrary to CSG's claimed "abstract idea," the Patents-in-Suit to not purport to invent any "new forms of environmental monitoring or control." *See* Zat. Decl., §VIII.A.ii.c.  Instead, they "are directed to

---

[8] *See also* 7:41-48 (disclosing that technical solution avoids "voice mode"  to achieve two-way communications); 7:52-54 and 7:61-67 (use of SMS, optionally involving port addresses, allows automated/on-demand communications between a mobile device and another device without requiring user intervention); and 8:59-65 (two-directional communications not requiring user intervention or crude user interfaces).

base unit improvements that facilitated improved communication techniques during environmental monitoring and control and are not directed to an abstract idea concerning environmental monitoring and control." *See* Zat. Decl., §VIII.A.ii.d.

The character of the claims as a whole confirms this. *C.f., McRO, Inc.,* 837 F.3d at 1312. For Claims 19 and 1, the significance and number of limitations that directly concern communications technology is greater than the significance and number of limitations that concern "monitoring and control." *See* Zat. Decl., §VIII.A.iii. The Patents-in-Suit and their claims are directed to improved communications rather than environmental monitoring and control. *See* Zat. Decl., §VIII.iv. Moreover, "[t]his bidirectional on-demand communication interface, implemented through the base unit, was unconventional in that a cellular device was not used in this manner before. It was also unique in that it enabled unsolicited messages and information to be sent from a remote monitored and controlled device to the user's cell phone such as sending notification of a fire alarm, a security break-in, or a child leaving a geographic (geo-fenced) area." *See* Zat. Decl., §V.C. Claims 1-18 and 19-20 of the '935 Patent (as compared to Claim 19) and Claims 2-24 of the '655 Patent (as compared to Claim 1) are similarly not "abstract." *See* Zat. Decl., §VIII.C (explaining why). In the end, the claims of the Patents-in-Suit "are directed to improved communications rather than environmental monitoring and control" and teaches specific structures for achieving "improve[d] communication." *See* Zat. Decl., §VIII.A.v.

### 3. CSG's Characterizations of The Patents-In-Suit Are Plainly Wrong.

Although the explanations above sufficiently rebut CSG's characterizations of the Patents-in-Suit, Ubiquitous nonetheless disputes the specific arguments made by CSG in its Motion:

- The Patents-in-Suit teach significantly more than environmental "monitoring and control." *See* Zat. Decl., §IX.A.i.

- The Patents-in-Suit do not merely claim a "result;" they claim an improved "base unit" that generates a result. *See* Zat. Decl., §IX.A.ii.

- Geo-fencing is not a "routine and conventional activity within environmental monitoring and control.  *See* Zat. Decl., §IX.A.iii.

- The Patents-in-Suit do not fall into the alleged categories of activities that CSG asserts are inherently unpatentable. *See* Zat. Decl., §IX.A.v.

- The other independent and dependent claims add limitations and do not reflect the "same abstract idea," or any abstract idea. *See* Zat. Decl., §IX.A.vi.

### 4.  The Combination Of Physical Elements Describes A Machine That By Its Very Nature Cannot Be "Abstract."

The elements of the claims of the Patents-in-Suit describe, even as deconstructed by CSG, a "machine." *See Burr v. Duryee*, 68 U.S. 531, 570 (1863) ("A machine is a concrete thing, consisting of parts, or of certain devices and combination of devices. The principle of a machine is properly defined to be 'its mode of operation,' or that peculiar combination of devices which distinguish it from other machines.").  A "machine" is explicitly patent eligible.  *See* 35 U.S.C. §101; *see also In re Nuijten*, 500 F.3d 1346, 1356 fn 4 (Fed. Cir. 2007) (device that generates a signal is a "machine").  Here, the claims of the Patents-in-Suit explicitly describe a "system" comprising tangible elements, and they should be construed as a machine.  *See Corning v. Burden*, 56 U.S. 252, 269 (1853) (construing claims as a "machine" in a way that is most favorable to the patentee where claims contain machine in the title and specification).

### C.  Even If The Court Finds That The Patents-in-Suit Are Directed To An Abstract Idea, The Claims Disclose "Inventive Concepts."

"In *Alice* step two, we consider the elements of the claim, both individually and as an ordered combination, to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Two-Way Media Ltd.*, 874 F.3d at 1338 (citing *Content Extraction & Transmission LLC*, 776 F.3d at 1347).  At Step 2, a claim is patent eligible if it embodies an inventive concept by reciting a "specific, discrete implementation of the abstract idea." *BASCOM Global Internet Servs., Inc.*, 827 F.3d at 1350; *see also Amdocs (Israel)*

*Ltd.*, 841 F.3d at 1300 (holding an invention patentable if claims "solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner"). A claim contains an "inventive concept" if it comprises more than "well-understood, routine, conventional activity already engaged in by the scientific community." *Mayo*, 566 U.S. at 79.

      1.  **<u>The Inventive Concepts</u>: The Base Unit and Cellular Remote Unit Each Embody At Least Three "Inventive Concepts."**

CSG's Motion ignores the evidence of the claims and the specification by asserting that the "base unit" is conventional. Motion at 10. But the description of the "base unit" discloses communications improvements applied to a base unit within the context of environmental monitoring and control, including the disclosure of application software to create on-demand triggers executed in response to events. *See* '665 Patent: 5:4-13:36, 7:41-48, 7:52-54, 7:61-67, 8:1-12, 8:59-65, 10:30-36, 10:50-66, 11:24-38 and Fig. 4; Zat. Decl., §VIII.A.i.b. Contrary to CSG's contention, such a "base unit" could not have been purchased off-the-shelf, and would have required assembly of OEM components and coding to connect the components together to assemble a base unit that could interact with a cellphone. *See* Zat. Decl., §VIII.A.i.b., §VIII.B.i.b.1. In addition, the use of a cellular phone to remotely control environmental devices was not available generally. *See* Zat. Decl., §VIII.B.i.b.2.

In the end, at least three "inventive concepts" are embodied in the claims of the Patents-in-Suit at the "base unit," including (1) two-way digital communications with a cellular phone, (2) unsolicited event notification with a cellular telephone, and (3) geo-fence based communications within these constructs. *See* Zat. Decl., §VIII.B.i.A. and §VIII.B.ii.1-3. As such, the "base unit" and the cellular control unit of the claims of the Patents-in-Suit were each not conventional in the pre-iPhone world of 2004, or at worst, there is a question of disputed fact to be resolved by a jury. *See Amdocs (Israel) Ltd.*, 841 F.3d at 1300; *Berkheimer*, 881 F.3d at 1365; *see also BSG Tech LLC*

**UBIQUITOUS CONNECTIVITY'S OPPOSITION TO CENTRAL SECURITY GROUP – NATIONWIDE, INC.'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Dkt. No. 13]**

*v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("in cases where the only issue at step two is whether claim limitations are well-understood, routine, and conventional, a genuine dispute over that issue will preclude summary judgment that a claim is ineligible under § 101."). Claims 1-18 and 20 of the '935 Patent (as compared to Claim 19) and Claims 2-24 of the '655 Patent (as compared to Claim 1) similarly embody "inventive concepts." *See* Zat. Decl., §VIII.C.

### 2. <u>Another Inventive Concept</u>: The Combination of The Claim Elements.

CSG's Step 2 analysis also wrongly concludes that the combination of the elements of the claims of the Patents-in-Suit was conventional in November 2004. However, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Global Internet Servs., Inc.*, 827 F.3d at 1350. CSG's Motion glosses over the requirement that a claim's elements must also be considered in their "ordered combination." *See Alice*, 134 S.Ct. at 2355; *Mayo*, 566 U.S. at 79-80; *see also KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 418-419 (2007) ("inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.").

As such, even if the Court finds that the base unit and cellular remote control were generic and their use conventional in 2004, which is not possible on this record, their combination into a system that allows for bidirectional communication between incompatible devices was indisputably not generic or conventional in 2004. *See* Zat. Decl., §VIII.B.iii. Indeed, their combination reflects "significantly more" than an "abstract idea" of environmental monitoring and control. *Id.*; *cf., Amdocs (Israel) Ltd.*, 841 F.3d at 1300-1301 (Where "generic components operate in an unconventional manner to achieve an improvement," the claim "provides the requisite 'something more' than the performance of well-understood, routine, and conventional activities previously known to the industry."). As thoroughly demonstrated above, and contrary to CSG's

claim, the claims of the Patents-in-Suit do not recite a collection of conventional components performing their ordinary functions. *See* Zat. Decl., §IV.B. They embody "improvements to acknowledged deficiencies in the art, thereby fully reflecting something 'substantially more' than an abstract idea." *Id,* §IV.B.i. For these reasons, CSG's Motion should also fail at Step 2.

### D. THE PATENTS-IN-SUIT ARE MORE LIKE THOSE DETERMINED TO BE CONCRETE WITH "INVENTIVE CONCEPTS" THAN THOSE DEEMED INVALID.

In addition to the characterizations CSG makes and that are disputed by Ubiquitous in Sections IV.B.3, *supra,* CSG makes an additional legal argument. It argues that the claims of the Patents-in-Suit are merely directed to "remotely controlling devices," Motion, at p. 11, and thus are patent ineligible under District Court cases.[9] *Id.* at pp. 10-13. To start, the cited opinions were all issued prior to *Enfish,* which is the first case to articulate a clear test to patentability for computer improvements. *Enfish*, 822 F.3d at 1335-1336 (holding *Alice* does not render all computer hardware/software inventions "abstract"). More importantly, the problem addressed by the Patents-in-Suit concern much more than monitoring and controlling—the patents claim "an improved base unit configured to perform on-demand, bi-directional command communications, not "remote access." *See* Zat. Decl., §IX.A.iv. CSG's cases are thus inapposite for this reason.

In the final analysis, the claims of the Patent-in-Suit are much more like those deemed patentable by the Federal Circuit. The easiest way to see this is by comparing the claims at issue in *Data Engine,*[10] *Berkheimer, Core Wireless, Visual Memory, Amdocs, Thales, McRO, Bascom, Enfish, and DDR* to the claims of the Patents-in-Suit. <u>Appendix C</u> to this brief includes those

---

[9] These cases are *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F.Supp.3d 717, 727 (N.D. Ill. 2016); *Gaelco S.A. v. Arachnid 360, LLC*, 293 F. Supp. 3d 783, 792 (N.D. Ill. 2017); *Tuxis Technologies, LLC v. Amazon.com, Inc.*, 2015 WL 1387815, at *2 (D. Del. Mar. 25, 2015); *Becton, Dickinson & Co. v. Baxter Intern., Inc.*, 127 F.Supp.3d 687, 692–93 (W.D. Tex. Aug. 3, 2015); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F.Supp.3d 553, 562 (D. Del. 2014).

[10] The full cite to this case, which does not appear above, is *Data Engine Technologies LLC v. Google LLC,* 2018 U.S. App. LEXIS 28412 (Fed. Cir. Oct. 9, 2018).

---

cases, the claims at issue in those cases, and a comparison to Claim 19 of the '655 Patent to those cases. Notably, most of the claims in these Federal Circuit cases are apparatus claims, like those in the Patents-in-Suit. <u>Appx. C</u> ("Comment" column). And all were either not "abstract" or were directed to technical improvement in the relevant art (or both). *Id.* ("Claim From Case" and "Comment" columns). This is exactly what Ubiquitous' claims do. *See, supra,* Section IV.B-C.

Conversely, the claims of the Patent-in-Suit are unlike those cited as precedent by CSG. Again, the difference in the claims is shown by comparing the claims in those cases[11] to the claims of the Patents-in-Suit. <u>Appendix D</u> to this brief includes those cases, the claims at issue in those cases, and a comparison to Claim 19 of the '655 Patent for reference. The claims in those cases are all method claims (unlike Ubiquitous' apparatus claims) for doing something "on a computer" but they all lack any tangible form (technical components) or improvements thereon. <u>Appx. D</u> ("Claim From Case" and "Comment" columns). For instance, they comprise things like displaying "forms" and "icons," "detecting events," "verifying mail," "identifying characteristics," "recording images," computerizing a contractual relationship, "processing information," and distributing "products over the internet." *Id.* Thus, these claims are not the correct analogues.

## V.   CONCLUSION

For at least the foregoing reasons, CSG's Motion should be denied after conversion to a summary judgment motion. Alternatively, Plaintiff requests the opportunity to amend its Complaint to provide the viewpoints of a POSITA as to the claims of the Patents-in-Suit.

---

[11] CSG cites as precedent *Internet Patents Corp.*, 790 F.3d 1343; *Electric Power Group, LLC v. Alstom S.A.,* 830 F.3d 1350 (Fed. Cir. 2016); *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d (Fed. Cir. 2017); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir 2016); *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *Content Extraction and Transmission LLC*, 776 F.3d 1343; *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 718–19 (Fed. Cir. 2014).

Dated: <u>November 5, 2018</u>                   Respectfully submitted,

<u>s/ *James F. McDonough, III*</u>

**RIGGS, ABNEY, NEAL, TURPEN,**
**ORBISON & LEWIS, P.C.**
Chad C. Taylor (OK 18308)
528 N.W. 12th Street
Oklahoma City, Oklahoma 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: ctaylor@riggsabney.com

**HENINGER GARRISON DAVIS, LLC**
James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)*
Travis E. Lynch (GA 162373)*
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5504, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

*Attorneys for Plaintiff*
*Ubiquitous Connectivity, LP*

    * admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of November, 2018, I caused to be electronically-filed the foregoing document with the Clerk of Court using the CM/ECF system, which caused it to be served on counsel who have appeared in this matter by electronic mail.

*/s/ James F. McDonough, III*
James F. McDonough, III