## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

UBIQUITOUS CONNECTIVITY, LP,  )
            )
    Plaintiff,     )
            )
    v.       )   Case No. 18-CV-368-JED-CDL
            )
CENTRAL SECURITY GROUP –   )
NATIONWIDE, INC.,     )
            )
    Defendant.   )

## OPINION AND ORDER

   This patent infringement case comes before the Court on the motion to dismiss of Defendant Central Security Group ("CSG"). (*See* Doc. 13). Moving under Rule 12(b)(6), CSG urges the Court to dismiss the infringement claims on the grounds that the claimed inventions are impermissibly abstract and the patents therefore invalid under 35 U.S.C. § 101. Additionally, the Court considers CSG's motion to strike an expert declaration submitted by Plaintiff Ubiquitous Connectivity, (*see* Declaration of Ivan Zatkovich, Doc. 27-4; Motion to Strike, Doc. 30), and Ubiquitous's cross motion to amend its complaint, (*see* Doc. 34).

## I.  BACKGROUND

   Ubiquitous owns United States Patents 8,064,935 and 9,602,655, both of which bear the title "Ubiquitous Connectivity and Control System for Remote Locations." The inventor began the patent application process for the invention in 2004. Because the application for the '655 patent was a continuation of the '935 application, the specifications for each of the patents are largely identical. Broadly stated, they describe a system for remotely monitoring and controlling environmental devices such as thermostats and security alarms using a cellphone and a "multifunctional base control unit."

Ubiquitous alleges that CSG markets and sells "a wirelessly controllable security system that incorporates a base unit . . . interfaced with an environmental device (security system and sensors)." (Doc. 2 ¶¶ 30, 45). In doing so, CSG allegedly infringes "one or more claims" in each patent, including Claim 1 of the '655 patent and Claim 19 of the '935 patent.

Claim 1 of the '655 patent recites:

1. A base unit configured to communicate with an environmental device and to communicate with a cellular remote unit having wireless connectivity capable of communicating from a geographically remote location, the base unit comprising:
   a first communication interface configured to receive environmental information from the environmental device and to send a control instruction to the environmental device;
   a wireless communication interface configured to send a first message to the cellular remote unit via a cellular communications network and to receive a second message from the cellular remote unit via the cellular communications network,
      wherein the first message is a first digital communications message including a representation of the environmental information, and
      wherein the second message is a second digital communications message including a command regarding the environmental device; and
   a microcontroller configured to process the second message, to provide the control instruction based on the command, and to send the control instruction to the environmental device via the first communication interface, and
      wherein the command is for the base unit initiated by a user from the cellular remote unit, and
      wherein the control instruction to the environmental device is associated with the command for the base unit, wherein the cellular remote unit is configured to determine position data of the cellular remote unit, and determine when the cellular remote unit is outside a geo-fence, wherein the cellular remote unit is configured to transmit a notification via a simple message service responsive to determining that the cellular remote unit is outside of the geo-fence.

Claim 19 of the '935 patent recites:

19. A communication system having wireless connectivity, the communication system comprising:
   a base unit operatively interfaced with an environmental device, and configured to receive a current status of an environmental device;
   a transmitter associated with said base unit, and configured to send a first message to a remote unit having wireless connectivity, wherein the first

message is a wireless message including the current status of the environmental device;

a receiver associated with said base unit, and configured to receive a second message from the remote unit, wherein the second message is a wireless message including a command for the environmental device; and

a controller operatively associated with the base unit and operatively connected with the environmental device, and configured to send the command to the environmental device.

Although CSG denies infringement in its Answer (Doc. 25), the company's dismissal motion is premised entirely on the argument that the patents-in-suit are invalid under 35 U.S.C. § 101 because they are drawn to ineligible subject matter, namely the abstract idea of monitoring and controlling devices.

Ubiquitous maintains that the patents are valid but argues that the issue cannot be properly resolved in this case without first constructing the patent claims and resolving disputed issues of fact. Accordingly, in Ubiquitous's view, the Court should either deny the motion as premature or convert it into a motion for summary judgment

## II.   LEGAL STANDARDS

### A.   Failure to State a Claim under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff meets this requirement if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Meeting this requirement requires a plaintiff to do more than plead facts that are "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence that the parties might present at trial, but to assess whether the plaintiff's complaint is legally sufficient to state a

claim upon which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014).[1] In assessing a claim's plausibility, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Id.* at 1136. The Court is not bound to accept an allegation as true when it amounts to no more than a legal conclusion. *Iqbal*, 556 U.S. at 678.

**B.     Patent Eligibility Under 35 U.S.C. § 101**

Patent eligibility is governed by 35 U.S.C. § 101, which provides that a patent may issue for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Whether subject matter is patentable is an issue of law, but the legal conclusion may contain underlying factual issues. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). Once issued, a patent is presumed to be valid, and the party contesting its validity bears the burden of establishing the contrary by clear and convincing evidence. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011).

Notwithstanding the statute's liberal approach to patentability, the Supreme Court has held that § 101 is subject to implicit but important exceptions: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The "abstract ideas" exception includes claims that are drawn to the function of a machine or the result of a process, rather than to the means of achieving the function or result. *Two-Way Media Ltd v. Comcast Cable Communs., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

---

1.   The Federal Circuit has exclusive jurisdiction over a district court's final decision in an action that arises under the patent laws, *see* 28 U.S.C. § 1295(a), but the court applies the standards of the relevant regional circuit when reviewing a district court's dismissal for failure to state a claim. *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1357 (Fed. Cir. 2019).

When evaluating claims for patent-eligible subject matter, the courts use a two-part test established by the Supreme Court. At step one of the "*Alice* test," courts determine "whether the representative claims are 'directed to' a judicial exception, such as an abstract idea." *Two-Way Media*, 874 F.3d at 1337 (citing *Alice*, 573 U.S. at 218). At step two, courts consider "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). The Supreme Court describes step two as the search for an "inventive concept." *Id.* (quoting *Mayo*, 566 U.S. at 72). A claim includes an inventive concept only if it involves more than "well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014).

## C.      Ruling on Patent Eligibility Under § 101 at the Pleading Stage

Although the Federal Circuit has repeatedly stated that invalidity under § 101 may be decided on a 12(b)(6) motion, *see Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018), the issue is inherently ill suited to adjudication at the pleading stage, particularly when the dispute turns on whether the claims are impermissibly abstract. *See e-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 577–79 (2020); *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-CV-257, 2020 WL 278481, *3–7 (W.D. Tex. Jan. 10, 2020); Andrew Kanel, *The Federal Circuit's Treatment of Rule 12 Dismissals for Lack of Patent Eligible Subject Matter*, 53 Akron L. Rev. 1053 (2019). Two compounding problems lead to this conclusion.

First, "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter," *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019), but the two tools mostly likely to aid the court in developing such an understanding—claim

construction and the presentation of expert testimony—will not ordinarily have occurred at the dismissal stage.[2]

Second, the *Alice* test is notoriously difficult to apply, even in the best of circumstances. In a recent survey of judges who frequently handle patent cases, respondents rated eligibility under § 101 to be the most difficult issue of patent validity and the area of patent law with the least doctrinal clarity. Matthew G. Sipe, *Patent Law 101: The view from the Bench*, 88 Geo. Wash. L. Rev. Arguendo 21, 29 (2020). Moreover, the morass is at its boggiest when, as here, the party challenging the patent's validity asserts the "abstract idea" exception to patent eligibility:

> The narrow character of the law of nature and natural phenomenon exceptions is relatively self-evident, but the contours of the abstract idea exception are not easily defined. For that reason, the abstract idea exception is almost impossible to apply consistently and coherently. . . . [The *Alice* test] is indeterminate and often leads to arbitrary results. Moreover, if applied in a legal vacuum divorced from its genesis and treated differently from the other two exceptions, it can strike down claims covering meritorious inventions not because they attempt to appropriate a basic building block of scientific or technological work, but simply because they seemingly fail the Supreme Court's test.

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part). Put more diplomatically, "precision has been elusive in defining an all-purpose boundary between the abstract and the concrete." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016). When this task is undertaken at the pleading stage, where a court cannot benefit from the claim construction process and a developed factual record, accuracy will be the exception rather than the rule.

## II.    MATTERS OUTSIDE THE PLEADINGS

Ubiquitous submits a variety of exhibits with its response, most significantly the expert declaration of Ivan Zatkovich, which, when supporting documents are included, spans nearly 150

---

2.  For the purposes of this motion, the Court adopts the claim constructions proposed by Ubiquitous. *See Two-Way Media*, 874 F.3d at 1336.

pages. In it, Mr. Zatkovich purports to explain the patents in suit, place them in the context of the technical field at the time the patents were issued, and generally opine as to why their claims are not impermissibly abstract under § 101 (i.e., that the claims are neither "directed toward an abstract idea" nor bereft of an "inventive concept"). CSG moves to strike the declaration, arguing that the dismissal motion must be decided based on the allegations in the complaint and patents in suit.

In response, Ubiquitous urges the Court to convert CSG's motion to dismiss to a motion for summary judgment under Rule 56. Alternatively, Ubiquitous moves for leave to amend its complaint so as to formally allege many of the facts and opinions expressed by Mr. Zatkovich.

### 1.     Motion to Strike

Rule 12(d) provides that, if a party presents matters outside the pleadings on a motion to dismiss, the court must exclude the additional material or convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d). Under the circumstances, the Court finds it preferable to exclude the expert declaration and the other extraneous materials submitted by Ubiquitous. Accordingly, the Court will grant CSG's motion to strike the declaration.

### 2.     Motion to Amend the Complaint

When, as here, a plaintiff seeks to amend his complaint more than 21 days after the filing of the defendant's answer, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. Proc 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Amendment should be denied only on a showing of undue delay, prejudice to the opposing party, bad faith or dilatory motive, or futility. *See Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir 2005). None of these factors apply in this case.

Certainly, there is no bad faith or dilatory motive at play here. Ubiquitous seeks to add allegations bearing subject matter eligibility, an issue CSG raised in its motion to dismiss. Curing an alleged defect in the initial pleading is a valid reason to amend. Moreover, prior to CSG's

motion, Ubiquitous had no reason to allege such facts. Accordingly, Ubiquitous cannot be said to have unreasonably delayed in moving to amend.

Likewise, the amendments would not be futile. The Federal Circuit recently held that a plaintiff may escape dismissal by alleging facts bearing on subject matter eligibility. In *Aatrix*, the district court dismissed the plaintiff's complaint after performing an *Alice/Mayo* analysis on the asserted patent claims and refused to allow the plaintiff to file an amended complaint. On appeal, the Federal Circuit ruled that the district court should have permitted the plaintiff to amend its complaint because the proposed amendments included factual allegations directed to the invented concepts aimed in its claimed invention. For example, the proposed amendments described the development of the patented invention, the problems in the existing technology at the time, and the improvements that patented inventions offered to solve those problems. Taken as true, these allegations would have raised a factual issue as to the presence of an inventive concept (and, by extension, to the patent's validity), thereby precluding dismissal. *Id.* at 1127. Accordingly, the court held that it was an abuse of discretion to dismiss the complaint without granting leave to amend. *Aatrix*, 882 F.3d at 1125.

Here, like the plaintiff in *Aatrix*, Ubiquitous seeks to amend its complaint in order to allege facts related to the field of technology and the innovations contained in the patent claims. (*See* Doc. 34). As explained further below, these facts are alleged with sufficient detail to preclude resolving the eligibility question as a matter of law at this stage of the litigation. Accordingly, the Court will grant Ubiquitous's motion to amend its complaint.

Although the amended complaint arguably moots CSG's motion to dismiss, the Court sees no reason to order a new round of briefing because the thrust of CSG's argument—that the claims are impermissibly abstract—remains applicable to the amended complaint. The only additional

argument to be made would be that the new allegations, derived from the expert declaration, are too conclusory or too divorced from the language of the patent claims to be taken as true. Because this is precisely the argument CSG raises in its opposition to the proposed amendment, (*see* Doc. 35), this too would be duplicative. Rather than order a new round of briefing only to be presented with the same arguments, the Court will simply construe CSG's existing motion to dismiss and response in opposition to amendment as addressing the amended complaint.[3]

### III.   DISCUSSION

**A.    Representative Claims**

CSG directs its invalidity argument to Claim 1 of the '655 patent and Claim 19 of the '935 patent. CSG contends that these claims—the only ones that Ubiquitous specifically asserts in its Complaint—are representative of all the claims in their respective patents. Accordingly, in CSG's view, the Court may determine the validity of the patents by applying *Alice* to a single representative claim in each patent and need not analyze all their claims individually.

Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative. *Berkheimer*, 881 F.3d at 1365. Here, Ubiquitous disputes that the claims are representative, but it offers no meaningful argument as to the significance of any limitations not found in the putatively representative claims. While Ubiquitous does provide an appendix breaking down the additional limitations found in the other claims, it makes no effort to explain how these limitations would alter the eligibility analysis. Instead, Ubiquitous merely argues that the claims cannot be

---

3.   The Western District of Texas took the same approach in another case involving the same patents. *See Ubiquitous Connectivity, LP v. City of San Antonio*, No. SA-18-CV-00718, 2019 WL 4696421 (W.D. Tex. Sept. 26, 2019).

considered representative because, under certain canons of patent construction, each claim in a patent is presumed to be different in scope and the addition of a limitation in a dependent claim gives rise to a presumption that the additional limitation is not present in the independent claim. This argument borders on frivolous.

For one, the fact that some claims differ in scope or include additional limitations does not mean that they cannot be adequately represented by another claim for the purposes of a § 101 analysis. The salient question is not whether the other claims are different, it is whether they are directed to the same abstract idea and, if so, whether they add an inventive concept sufficient to transform the abstract idea into patentable subject matter. *See Content Extraction*, 776 F.3d at 1348 (holding that the district court properly treated the claims as representative because the patentee failed to identify other claims purportedly containing an inventive concept).

On a more basic level, Ubiquitous's argument is untenable because it implies that a claim cannot be representative unless it is *identical* to all the other claims in the asserted patent. Since no patent consists of identical claims, Ubiquitous effectively argues that courts may never address patentability based on a representative claim. As this practice has been applied for many years by courts at every level, including the Supreme Court, such an argument cannot withstand even cursory scrutiny. Accordingly, because Ubiquitous has provided no meaningful argument as to the distinctiveness of any limitations not found in the claims identified by CSG, the Court will treat Claim 1 as representative of the claims in the '655 patent and Claim 19 as representative of the claims in the '935 patent.

**B.** *Alice* **Step One**

The Supreme Court has never announced a definitive rule for determining when a claim is "directed to an abstract idea" at step one. *See Alice*, 573 U.S. at 221 ("we need not labor to delimit the precise contours of the 'abstract ideas' category in this case"). Nevertheless, other courts

have provided some useful guidance. The first task is to determine what the claim is "directed to," a process some courts have described as distilling "the gist" of the claim. *E.g.*, *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1046 (N.D. Cal. 2015); *Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 692 (W.D. Tex. 2015). In doing so, courts should consider the claim's character as a whole and look to the focus of the claimed advance over the prior art. *Affinity Labs*, 838 F.3d at 1257. Because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," courts must be careful to articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (first quoting *Mayo*, 566 U.S. at 71; then citing *Alice*, 573 at 217).

In determining whether the idea of the claim is abstract, courts should consider whether it focuses on a specific means or method rather than a result or effect that itself is the abstract idea and merely invokes generic processes and machinery. *Two-Way Media*, 874 F.3d at 1337. As a practical matter, courts usually determine what the claims are "directed to" and then compare the subject matter to claims that have been analyzed by other courts. *See, e.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

According to the patent specification, there was no home-monitoring system available in 2004 that monitored "ambient environmental factors," remotely alerted an owner to changes in those factors, and allowed the owner to "remotely redefine the acceptable environmental parameters." Existing systems for facilitating home automation were either limited by distance (e.g., communication by power line) or were not user friendly (e.g., dual-tone multi-frequency signaling over a telephone). Given the problems the invention purports to solve, the Court finds

11

that the claims are directed to a system in which a cellphone may be used to remotely monitor and control environmental units via a central base unit.

As for whether this qualifies as an "abstract idea," the Federal Circuit's analysis of the claim in *Affinity Labs*, 838 F.3d 1253 is instructive. In *Affinity Labs*, the patent claims were directed to streaming regional broadcast signals to cellular telephones located outside the region served by the regional broadcaster. A representative claim recited as follows:

> 1. A broadcast system, comprising:
> a network based resource maintaining information associated with a network available representation of a regional broadcasting channel that can be selected by a user of a wireless cellular telephone device; and
> a non-transitory storage medium including an application configured for execution by the wireless cellular telephone device that when executed, enables the wireless cellular telephone device:
> to present a graphical user interface comprising at least a partial listing of available media sources on a display associated with the wireless cellular telephone device, wherein the listing includes a selectable item that enables user selection of the regional broadcasting channel;
> to transmit a request for the regional broadcasting channel from the wireless cellular telephone device; and
> to receive a streaming media signal in the wireless cellular telephone device corresponding to the regional broadcasting channel, wherein the wireless cellular telephone device is outside of a broadcast region of the regional broadcasting channel, wherein the wireless cellular telephone device is configured to receive the application via an over the air download.

*Id.* at 1255–56. The court held that, "[s]tripped of excess verbiage," claim 1 was directed to a broadcast system in which a cellular telephone located outside the range of a regional broadcaster (1) requests and receives network-based content from the broadcaster via a streaming signal, (2) is configured to wirelessly download an application for performing those functions, and (3) contains a display that allows the user to select particular content. *Id.* at 1256.

The court held that providing out-of-region access to regional broadcast content was an abstract idea as that term has been used in the § 101 context; calling it "a broad and familiar concept concerning information distribution . . . untethered to any specific or concrete way of implementing

12

it." *Id.* at 1258. Moreover, although the claim referred to "general components such as a cellular telephone, a graphical interface, and a downloadable application, the claimed invention was "entirely functional in nature." *Id.*

The court further reasoned that, even when the details contained in the specification were imported into the claims, the result would not be a concrete implementation of the abstract idea. The specification described the system at a high level of generality and failed to "provid[] any details regarding the manner in which the invention accomplishes the recited functions." *Id.* at 1260.

Having analyzed the claim in light of the specification, the court reasoned that it was similar to the claims at issue in *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016) and *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014). Like those claims, which were held to be directed to abstract ideas related to information transfer, the claim at bar involved tangible components, but the components were conventional and were used in conventional ways. *See Affinity Labs*, 838 F.3d at 1260–61.

Conversely, the *Affinity Labs* court concluded that the claim under consideration was distinguishable from those in other cases where the claims were directed to eligible subject matter. For example, in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the invention was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Affinity Labs*, 838 F.3d at 1260–61 (quoting *DDR Holdings*, 773 at 1257). The *Affinity Labs* patents, by contrast, claimed "the general concept of out-of-region delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept." *Id.* at 1262. Similarly, the claims in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) focused on "an

13

improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity," while the claims under consideration by the *Affinity Labs* court were directed "to the use of cellular telephones as tools in the aid of a process focused on an abstract idea" rather than to an improvement in cellular-telephone technology itself. *Affinity Labs*, 838 F.3d at 1262.

In light of the reasoning in *Affinity Labs*, the representative claims do not appear to be directed to an abstract idea. On one hand, the claims recite generic electronics components such as "transmitters" and "controllers" that are "operatively interfaced" or "configured" to interact with the other components in order to bring about the desired function. Thus, like the claim in *Affinity Labs*, the claims at issue here merely describe the system at a high level of generality and in purely functional terms. On the other hand, unlike the patent specification in *Affinity Labs*, which also described the system in highly general terms, the specification in the patents in suit offers a detailed explanation of how the claimed systems work. For example, the specification discloses that the system achieves the claimed advance—allowing users to monitor and control environmental devices using a cellphone—by programing the base unit and the remote unit to communicate with each other using Short Message Service (SMS) messaging. *See* Patent No. '935 col. 7 l. 5–25. Moreover, the specification includes technical details to this end, such as how a port addressing scheme allows the messages to bypass cellular telephone functions and to operate features of the remote unit independently. Thus, while the claimed system is made up of conventional components, the components appear to be configured in an unconventional way to solve an existing technical problem. In this way, the claims are more like those in *DDR Holdings* and *Enfish*, which were directed to eligible subject matter because, rather than invoking the technology merely as a means to carry out an abstract idea, the claims purported to improve the

14

technology itself. Similarly, the claims in this case, read in light of the specification, do not claim the ability to remotely monitor and control environmental devices generally. Rather, the claims purport to improve the technology used to do so by devising a means for base units to communicate with remote units (i.e., cellphones). Thus, in the Court's view, the claims are not directed to an abstract idea.

## C.    *Alice* Step Two

Even if the claims were directed to an abstract idea, Ubiquitous would survive dismissal at step two of the *Alice* inquiry because the well pleaded allegations show that the patents include an "inventive concept." A claim includes an inventive concept if it involves more than "well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction,* 776 F.3d at 1347–48. Here, Ubiquitous alleges several inventive concepts "embodied in the claims of the . . . 'base unit,'" including "two-way digital communications with a cellular phone." (Doc. 34-2).

CSG argues that the Court should ignore such allegations because they are conclusory and go beyond the language of the patent claims. Neither point is convincing.

The allegations are not purely conclusory because they are supported by substantial factual allegations elsewhere in the complaint. For example, Ubiquitous alleges that the claims recite unconventional activity because, prior to the inventions in question, base units could not communicate with cellphones. (*See* Doc. 34-2 at 6, 9). Moreover, although the claim language is general, the specification discloses in detail the purportedly novel means by which the claimed invention overcomes the limitations that existed in the state of the art at the time. Thus, the amended complaint includes factual allegations that are adequately pleaded and may be taken as true for the purposes of a motion to dismiss.

15

CSG also argues that allegations regarding the novelty of the patented technology should be ignored because "[e]ligibility and novelty are separate inquiries." (*See* Doc. 35 (quoting *Two-Way Media*, 874 F.3d at 1340)). In doing so, however, CSG cherry-picks a quote from *Two-Way* in order to suggest that the novelty of the claimed feature is irrelevant to the eligibility analysis. This is manifestly not the case. Although 35 U.S.C. § 102 establishes "novelty" as a distinct statutory requirement, the Supreme Court has acknowledged that "the § 101 patent eligibility inquiry and . . . the § 102 novelty inquiry might sometimes overlap." *Mayo*, 566 U.S. at 90. This is hardly surprising, as a novel invention is unlikely to be "well-understood, routine, or conventional." Accordingly, factual allegations regarding the purported innovation are relevant to the *Alice* inquiry. *See Aatrix*, 882 F.3d at 1127 (holding that amendment was not futile because the proposed additions "presente[ed] specific allegations directed to 'improvements and problems solved by the . . . patented inventions'").

Because the amended complaint includes allegations that, taken as true, prevent resolving the eligibility question as a matter of law, CSG's motion to dismiss must be denied. *See Aatrix*, 882 F.3d at 1125.

## D.     Caveats

Nothing in this opinion should be construed as precluding a finding of patent invalidity on a subsequent motion for summary judgment. Formal claim construction could result in claims that are necessarily directed to an abstract idea. *See e-Numerate Sols.*, 149 Fed. Cl. at 580 ("[C]laim construction can affect—and perhaps, in most cases, will affect—a court's § 101 eligibility analysis."). Or, CSG might bring forth evidence showing that the allegedly inventive concepts were actually "well-understood, routine, or conventional" at the time. Finally, even if the patents recite eligible subject matter under § 101, the claims may turn out to be invalid for some other reason, such as a lack of sufficient novelty under § 102 or for obviousness under § 103.

16

## IV.    CONCLUSION

For the reasons explained above, Defendant's Motion to Strike (Doc. 30) is **granted,** Plaintiff's Motion to Amend (Doc. 34) is **granted,** and Defendant's Motion to Dismiss (Doc. 13) is **denied.**

SO ORDERED this 17th day of May, 2021.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT